THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EVARISTO ASENCIO, Defendant and Appellant.

No. 10696. Argued January 10, 1945.—Decided February 13, 1945.

*Enrique Báez García* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Travieso delivered the opinion of the court.

The appellant was sentenced to pay a fine of $50 on a charge of violating § 10 (*b*) (4) of Act No. 72 approved April 26, 1940 (Laws of 1940, p. 492), in connection with Regulation No. 2 of the Commissioner of Health, dated May 17, 1932, said violation consisting in that the defendant "did unlawfully, willfully, and maliciously offer for sale to the public, for human consumption, adulterated vinegar, which is a food." The information charges that the vinegar which the defendant offered for sale contained 1.66 gm. per 100 c.c. acidity instead of 4 gm. per 100 c.c., which is the average acidity that vinegar should contain in accordance with said Regulation.

By the first assignment of error it is urged that the acts charged against the defendant do not constitute a public offense under the laws of Puerto Rico; that the manufacture and sale of the product "imitation vinegar" is a lawful business; and that the defendant has a constitutional right to freely engage in said business.

There is no dispute as to the evidence. The defendant held a license for manufacturing vinegar. On the ground floor of his house, an inspector of the Department of Health found several barrels of vinegar and took three samples of

their contents. An analysis of said samples showed that the vinegar did not contain the degree of acidity required by the Regulation. The defendant sold said product in bottles bearing a label with the legend: "Imitation Vinegar"; "colored with caramel."

Section 2(c) of the Puerto Rico Food, Drug, and Cosmetic Act (Act No. 72, approved April 2, 1940, p. 492) provides that for the purpose of the Act "the term 'food' shall mean (1) articles used for food or drink for man or other animals, (2) chewing gum, and (3) articles used for components of any such articles." Section 3 prohibits "(a) the manufacture, sale, or delivery, holding or offering for sale any food . . . that is adulterated or misbranded." Section 10 of the same Act, claimed to have been violated by the appellant, provides:

"Section 10.—A food shall be deemed to be adulterated: (b) (1) If any valuable constituent has been in whole or in part omitted or abstracted therefrom;. . . or (4) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength or make it appear of better quality or of greater value than it is."

Mr. Luis Guillermety, a chemist of the Department of Health who tested the samples, testified that the vinegar contained 1.66 gm. per 100 c.c. acidity when it should have contained 4 gm. per 100 c.c. acidity, and this was an adulteration; that all vinegars, really pure vinegars as well as those manufactured on the basis of acetic acid, should contain not less than 4 per cent acidity which is the legitimate standard required by the Regulation; that an "imitation vinegar" should also contain not less than 4 per cent acidity in order to comply with the required standard; that the vinegar manufactured by the defendant contained only 1.66 per cent and should be considered as adulterated; that the Regulation provides "that all vinegars, whether diluted or not, as well as diluted acetic acid, should contain not less than 4 gm. of

acetic acid per each 100 c.c.," and that this includes the so-called "imitation vinegar."

There was no error in the application of the law to the facts of the case. The article which the defendant offered for sale was a food, in accordance with the statutory definition. The defendant in his testimony admitted that he received vinegar in 55-gallon barrels containing 100 per cent acidity and that he diluted it with water without bothering to inquire as to the standard of acidity which vinegar should contain in order that it might be lawfully offered for sale. Ignorance of the law does not excuse any one from compliance therewith. Nor does the fact that the adulterated food was sold as "imitation of vinegar" constitute a defense. The Food, Drug, and Cosmetic Act would become a dead letter if the mere use of the word "imitation" should render possible the sale to the public of adulterated products, such as "imitation milk," "imitation magnesia," etc. See *People* v. *Ramos,* 50 P.R.R. 74.

Notwithstanding the efforts made by the appellant, he has failed to convince us that his use of a label containing the words "imitation vinegar" is the best proof that he did not intend to deceive the consumer, as the latter when purchasing the product knew that the same was not vinegar.

If there is anything clearly inferable from the evidence it is the fraudulent purpose with which the phrase "imitation vinegar" was used in the printed labels employed by the defendant. The defendant himself testified thus: "I sold that vinegar in that way for about three years. I received vinegar in 55-gallon barrels in order to dilute it with water, as it was 100-degree strong." This clearly shows that what the defendant sold was not a product which, not being vinegar, could be called "imitation vinegar," but vinegar which was reduced or diluted, through the addition of water, from 100 degrees to 1.66 gm. per 100 c.c., which is quite below the standard of acidity of 4 gm. per 100 c.c. fixed by the Regulation.

■ The appellant contends that the Regulation of the Commissioner of Health, dated May 17, 1938 (*sic*), is not in force, because the same was promulgated under Act No. 63 of April 28, 1931 (Laws of 1931, p. 414), which was repealed by Act No. 149 of May 12, 1939 (Laws of 1939, p. 726), and the latter was in turn repealed by Act No. 72 of April 26, 1940 (Laws of 1940, p. 492), which is the one now in force in Puerto Rico.

We have carefully examined the three Acts above mentioned. All of them set forth in identical terms the meaning of "food" and when shall a food be deemed to be "adulterated." In each of said Acts the Commissioner of Health is empowered to promulgate such regulations as may be necessary for the enforcement of the Act. The regulations thus promulgated have the force of law and must be obeyed until they are repealed, expressly or impliedly, by other subsequent regulations or laws. We have been unable to find in either the Act of 1939 or in that of 1940, any provision whereby the regulations previously promulgated are expressly repealed. The repealing clause in each of said Acts merely provides that "all laws or part of laws in conflict herewith are hereby repealed." The 1932 Regulation, far from being in conflict with said Acts, is absolutely necessary for the effectiveness thereof. This is shown by the fact that the Regulation issued on June 18, 1942, expressly provides that Regulation No. 2 of May 17, 1932, regarding vinegars, forms part of the new Regulation. See *People* v. *Ortiz*, 62 P.R.R. 284.

3. The third assignment of error lacks merit. The information states facts sufficient to inform the accused of the nature of the offense charged against him. *People* v. *Morales*, 61 P.R.R. 870.

The judgment appealed from should be affirmed.